IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

WILLIAM H.[1],

        Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

        Defendant.

Case No. 3:17-cv-1019-AC

OPINION AND ORDER

BRUCE BREWER
PO Box 421
West Linn, OR 97068
    Of Attorney for Plaintiff

BILLY J. WILLIAMS
United States Attorney
RENATA GOWIE
Assistant United States Attorney
District of Oregon
1000 SW Third Ave., Suite 600
Portland, OR 97204-1011

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

1 – OPINION AND ORDER

HEATHER GRIFFITH
Special Assistant United States Attorney
Office of the General Counsel
701 Fifth Ave., Suite 2900 M/S 221A
Seattle, WA 98104-7075
   Of Attorneys for Defendant

*Opinion and Order*

ACOSTA, Magistrate Judge:

William H. ("Plaintiff") seeks judicial review of the final decision by the Social Security Commissioner ("Commissioner") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("SSA"). This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Based on a careful review of the record, the Commissioner's decision is AFFIRMED.

*Procedural Background*

Plaintiff filed for DIB and SSI on June 8, 2012, alleging disability as of December 4, 2009, due to hypertension; degenerative disc disease of the lumbar spine; arthritis of the back and knees; post-surgical right knee meniscus tear; and depression. (Tr. 287.) His applications were denied initially and upon reconsideration. (Tr. 19.) Following an administrative hearing, the ALJ issued a decision finding Plaintiff not disabled. (Tr. 121.) However, the Appeals Council vacated the decision and remanded the case for further consideration. (Tr. 137.) A hearing was held on November 4, 2016, before an Administrative Law Judge ("ALJ"); Plaintiff was represented by a non-attorney representative and testified, as did a vocational expert ("VE"). (Tr. 57-73.) On January 27, 2017, ALJ Paul Robeck issued a decision finding Plaintiff not disabled. (Tr. 15-30.) Plaintiff requested timely review of the ALJ's decision and, after the Appeals Council denied his request for review, filed a complaint in this Court. (Tr. 1-3.)

2- OPINION AND ORDER

*Factual Background*

Born in 1969, Plaintiff was 40 years old on his alleged disability onset date. (Tr. 28.) Plaintiff completed high school and previously worked as a maintenance worker, warehouse worker, and production worker. (Tr. 289.)

*Standard of Review*

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotations omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1502 and 404.920. First, the Commissioner considers whether a claimant is engaged in "substantial gainful activity." *Yuckert*, 482 U.S. at 140; 20 C.F.R. § 416.920(b). If so, the claimant is not disabled.

3- OPINION AND ORDER

At step two, the Commissioner evaluates whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(a)(4)(ii). If the claimant does not have a severe impairment, he is not disabled.

At step three, the Commissioner determines whether the claimant's impairments, either singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(d), 416.920(a)(4)(iii). If so, the claimant is presumptively disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner resolves whether the claimant can still perform "past relevant work." 20 C.F.R. §§ 404.1520(f) and 404.920(f), 416.920(a)(4)(iv). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner.

At step five, the Commissioner must demonstrate that the claimant can perform other work existing in significant numbers in the national or local economy. *Yuckert*, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(g), 416.960(c). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.920(a)(4)(v).

*The ALJ's Findings*

At step one of the sequential evaluation process outlined above, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date. (Tr. 18.)

At step two, the ALJ determined Plaintiff had the following severe impairments: bilateral degenerative joint disease of the knee, status post right knee meniscus repair surgery; lumbar

4- OPINION AND ORDER

spondylosis; degenerative disc disease with mild endplate compression; anxiety; and depression. (Tr. 18.) The ALJ found Plaintiff's hypertension and hernia were non-severe impairments. (Tr. 22.)

At step three, the ALJ found that Plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. (Tr. 19-21.) Because Plaintiff did not establish disability at step three, the ALJ continued to evaluate how Plaintiff's impairments affected his ability to work during the relevant period. The ALJ found Plaintiff had the residual functional capacity ("RFC") to perform modified light work as defined by 20 C.F.R. §§ 404.1567(b), 416.967(b), except that:

> he can stand and/or walk a total of two hours out of an eight hour day; postural activities are limited to occasionally, but no climbing ladders, ropes, scaffolding; he is limited to simple repetitive task type-work; should avoid concentrated exposure to extremes of temperature, wetness, humidity, vibration, hazards.

(Tr. 21.)

At step four, the ALJ found that Plaintiff could not perform his past relevant work. (Tr. 28.)

At step five, the ALJ found Plaintiff could perform jobs existing in significant numbers in the national economy, including small products assembler and laundry folder. (Tr. 29-30.) Accordingly, the ALJ concluded Plaintiff was not disabled. (Tr. 30.)

*Discussion*

Plaintiff argues the ALJ erred by: (1) rejecting Plaintiff's subjective symptom testimony; (2) giving some weight to the medical opinion of Dr. Jan Yomogida, Psy.D.; (3) failing to formulate an RFC consistent with Plaintiff's limitations; and (4) failing to reconcile differences between VE testimony and the Dictionary of Occupational Titles ("DOT").

\ \ \ \ \

5- OPINION AND ORDER

I. Plaintiff's Subjective Symptom Testimony.

The Ninth Circuit relies on a two-step process for evaluating the credibility of a claimant's testimony about the severity and limiting effect of the stated symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (citing *Lingenfelter v. Astrue*, 503 F.3d 1028, 1035-36 (9th Cir. 2007)). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter*, 503 F.3d at 1036 (citation and quotation marks omitted). Second, absent evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). Further, an ALJ "may consider . . . ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, . . . [or] other testimony that appears less than candid." *Id.* at 1284. However, a negative credibility finding made solely because the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence" is legally insufficient. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). Nevertheless, the ALJ's credibility finding may be upheld even if not all of the ALJ's rationales for rejecting claimant testimony are upheld. *See Batson*, 359 F.3d at 1197.

Plaintiff completed an adult function report stating that his knee and back pain prevented him from performing his past jobs as a manual laborer. (Tr. 323.) Plaintiff further stated that he does not perform yard work often and required breaks while performing household chores. (Tr. 325.) Plaintiff's impairments affected his ability to lift, squat, bend, stand, walk, sit, kneel, and climb stairs. (Tr. 328.) Plaintiff also stated that he followed written and spoken instructions well, got along with authority figures, and could generally handle changes in routine. (Tr. 329.)

The ALJ rejected Plaintiff's subjective testimony. First, the ALJ noted that Plaintiff ceased working for reasons other than his impairments. *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001). Plaintiff alleged a disability onset date of December 2009, and ceased working in December 2009 due to "interpersonal conflicts." (Tr. 288.) While Plaintiff alleged mental impairments in addition to back and knee pain, he testified that his mental impairments caused dizziness and mild confusion. However, mental symptoms such dizziness and mild confusion are not relevant to allegations of interpersonal problems. Moreover, Plaintiff otherwise indicated he got along well with authority figures. (Tr. 329.) As such, because Plaintiff quit working for reasons other than his alleged impairments, the ALJ did not err in his interpretation of the record.

Additionally, the ALJ noted that Plaintiff's alleged disability onset date was not supported by the evidence of record. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (inconsistency between a plaintiff's subjective testimony and the medical record is a legally sufficient reason to discredit such testimony). Plaintiff did not seek treatment for his impairments at any point near the December 2009 time period he allegedly became disabled. Plaintiff sought treatment for a hernia in July 2009, but did not mention knee or back pain or mental health issues. (Tr. 375.) While Plaintiff points to a 2011 examination showing knee pain and a 2007 MRI of the lumbar spine demonstrating moderate degenerative disc disease, because as the ALJ's reasoning was rational, it should not overturned. *See* (Tr. 374, 573); *Burch*, 400 F.3d at 679. The ALJ did not dispute that Plaintiff suffered from knee and back impairments, but instead found an inherent conflict between allegedly disabling physical pain and Plaintiff's lack of pain management treatment for more than one year before and after the alleged onset date. Accordingly, the ALJ did not err.

7- OPINION AND ORDER

The ALJ also discredited Plaintiff's subjective testimony because his activities of daily living conflicted with his alleged functional limitations. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Although Plaintiff testified that walking was difficult due to knee and back pain, he also explained that walking was his primary method of transportation during at least a portion of the adjudicatory period. In September 2014, Plaintiff reported that he walked 1.5 miles to and from his psychologist twice per month; in August 2015, he was "eager to remain active as he walks most everywhere;" and in January 2016, Plaintiff slipped and fell while walking to the grocery store. (Tr. 604, 669, 686.) Furthermore, the ALJ noted that Plaintiff "tweaked" his knee cutting blackberries in April 2015, and was working on repairing his home in May 2016. (Tr. 696, 722.) Both cutting blackberries and repairing a home exceeded Plaintiff's stated limitations regarding lifting, bending, and walking and, as such, the ALJ did not err in using them to discredit Plaintiff's testimony.

The ALJ rejected subjective testimony about the severity of Plaintiff's back and knee pain because Plaintiff received relatively conservative treatment. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008). For instance, in October 2013, Plaintiff reported that his knee was in "extreme pain," yet he declined an injection to alleviate his symptoms in favor of ibuprofen. (Tr. 552.) Additionally, Plaintiff stated that knee braces provided significant relief and increased his functionality. (Tr. 601.) Plaintiff's disc disease was managed with similarly conservative treatment: a back brace and a TENS unit reportedly provided relief, and Plaintiff's treating provider recommended lifestyle modification and physical therapy in association with ibuprofen and short-term pain relievers. (Tr. 609, 783.) Plaintiff argues he took gabapentin, Flexeril, and oxycodone, but the record shows that such medications were prescribed in small, intermittent doses, and Plaintiff took them "as needed." As such, the ALJ's reasonable interpretation of the record must be upheld, even if other, equally rational, interpretations exist.

8- OPINION AND ORDER

The bulk of Plaintiff's arguments rest on the premise that the ALJ's rejection of his subjective testimony was impermissibly vague because the reasons the ALJ provided were insufficiently connected to the testimony they purported to discredit. However, even if the ALJ explained his decision with "less than ideal clarity," he did not err so long as his logical path may be reasonably discerned. *See Alaska Dep't. of Envtl. Conserv. v. EPA*, 540 U.S. 461, 497 (2004) ("[e]ven when an agency explains its decision with 'less than ideal clarity,' a reviewing court will not upset the decision on that account 'if the agency's path may reasonably be discerned'"); *see also Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) (same, citing *Alaska Dep't of Envtl. Conserv.*). Here, the ALJ's path could be clearly discerned, as the ALJ's presentation of conflicting evidence squarely contradicted Plaintiff's claims of disabling back and knee pain.

## II. Dr. Yomogida's Medical Opinion.

The ALJ must provide clear and convincing reasons for rejecting the uncontradicted medical opinion of a treating or examining physician, or specific and legitimate reasons for rejecting contradicted opinions, so long as they are supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Nonetheless, treating or examining physicians are owed deference and will often be entitled to the greatest, if not controlling, weight. *Orn*, 495 F.3d at 633 (citation and internal quotation omitted). An ALJ can satisfy the substantial evidence requirement by setting out a detailed summary of the facts and conflicting evidence, stating his interpretation, and making findings. *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 600-01 (9th Cir. 1999). However, "the ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick*, 157 at 725 (citation omitted). Accordingly, the ALJ's reasons for rejecting the treating and examining physicians must be specific and legitimate, and supported by substantial evidence. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

9- OPINION AND ORDER

In 2014, Dr. Yomogida completed a mental RFC assessment stating that Plaintiff was markedly limited in his ability to understand and remember detailed instructions, carry out detailed instructions, and complete a normal workday. (Tr. 593-94.) The doctor found that Plaintiff was not limited in the area of social interaction, but was moderately limited in some categories of understanding and memory, as well as the ability to travel and use public transportation. (Tr. 595.) Dr. Yomogida believed that Plaintiff's mental health impairments were secondary to his physical impairments. (Tr. 596.)

The ALJ gave "some" weight to Dr. Yomogida's opinion. Plaintiff argues, perfunctorily, that the ALJ erred by failing to give sufficiently specific reasons for granting only partial weight to Dr. Yomogida's opinion. Review of the decision, however, reflects that the ALJ discredited the doctor's opinion in part because the doctor rendered her opinion less than one month after beginning a treatment relationship with Plaintiff, leading the ALJ to believe that the doctor had a "limited basis" for her findings. Because the length of a treatment relationship is a legally valid basis to give less weight to a physician's opinion, the ALJ did not err. 20 C.F.R. §§ 404.1527(c)(2)(i).

The ALJ also noted that Dr. Yomogida's opinion, drafted in 2014, conflicted with a 2012 workplace evaluation. Dr. Yomogida stated that Plaintiff's functioning in the areas of adaptation, understanding and memory, and concentration and persistence, were limited beginning on his alleged disability onset date in December 2009; yet, a 2012 workplace assessment detailed no difficulties with any of those functional categories. (Tr. 510-14.) Indeed, Plaintiff exhibited enthusiasm for his work, arrived on time, completed tasks as assigned, adequately adapted to change, and paid attention to his tasks. (Tr. 511.) Therefore, the ALJ's partial rejection of Dr. Yomogida's opinion was free from error.

\\\\\

10- OPINION AND ORDER

III. RFC Assessment.

The RFC assessment represents the most activity in which a person can engage, considering his physical or mental impairments. *See* 20 C.F.R. § 404.1545. The RFC must include all medically determinable impairments, even those considered non-severe. *Id.*; SSR 96–8p, *available at* 1996 WL 374184.

Plaintiff argues that the ALJ erred by "failing to include any mental impairments" in the assessed RFC. However, Plaintiff's argument is inapposite, as the assessed RFC limited him to "simple repetitive task type-work." (Tr. 21.) As such, Plaintiff fails to demonstrate how the ALJ erred in formulating the RFC with respect to his mental impairments.

IV. VE Testimony at Step Five.

"While the claimant has the burden of proof at steps one through four, the burden of proof shifts to the [Commissioner] at step five to show that the claimant can do other kinds of work." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009) (citations omitted). The Commissioner shows that a claimant is capable of working by determining the claimant's RFC and posing hypothetical questions to a VE that incorporate the claimant's limitations. *Id.* The VE lists jobs the hypothetical claimant is capable of performing, and the ALJ determines, "given the claimant's RFC, age, education, and work experience," if there are jobs in the national economy the claimant can perform. *Id.* The Commissioner must determine "specific jobs existing in substantial numbers in the national economy that [a] claimant can perform despite [his] limitations." *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995).

The ALJ assessed an RFC restricting Plaintiff to two hours of sitting or standing in an eight-hour day. At the administrative hearing, the VE testified that a hypothetical plaintiff with a two-hour sitting or standing restriction could perform the jobs of small products assembler or

laundry folder. (Tr. 70.) The VE further testified that his testimony was consistent with the Dictionary of Occupational Titles ("DOT"). (Tr. 70.)

Plaintiff argues that the two-hour sitting or standing restriction is inconsistent with the jobs identified by the VE, because both are classified at the "light work" level. Indeed, the ALJ found the VE's testimony inconsistent with the DOT because the "light exertional range of work typically requires the ability to stand and walk for up to six hours a day;" and the ALJ attempted to resolve the apparent discrepancy in the written decision. (Tr. 29.) However, both the ALJ and Plaintiff erroneously manufactured the inconsistency, because jobs at the level of light exertional work do not necessarily require six hours of standing or walking.

The Code of Federal Regulations defines light work as:

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, *or* when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b) (emphasis added). The DOT echoes the sentiment:

> A job should be rated Light Work: (1) when it requires walking or standing to a significant degree; *or* (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; *and/or* (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible.

*Dictionary of Occupational Titles*, Appx. C, *available at* 1991 WL 688702 (4th ed. 1991) (emphasis added).

Thus, a job classified at the light exertional level does not necessarily require a worker to stand or walk for six hours. Instead, per the DOT's definition, a worker could sit for most of the day while using arm or leg controls. An examination of the small products assembler description in the DOT demonstrates that the position is of the latter variety, performing "repetitive tasks on

12- OPINION AND ORDER

an assembly line to mass produce small products," frequently working at a bench as a member of a team, and "assembling one or two specific parts and passing [it] to another worker;" further, the position generally requires frequent handling, reaching, and fingering. DOT 706.684-022, 1991 WL 679050. As defined, the small products assembler job is clearly one that involves seated work with frequent use of the hands and arms, which is analogous to the pushing or pulling of arm controls, as contemplated by the Regulations.

The court concludes that the small products assembler position could be performed while sitting and, therefore, the VE's testimony did not necessarily conflict with the definition of light work. *See Moore v. Comm'r of Soc. Sec. Admin.*, 14-cv-354-AC, 2015 WL 1731400, *7-9 (D. Or. 2015) (no inherent conflict between the definition of light work and a two-hour standing or walking restriction). Because there was no apparent conflict, the ALJ was not required to investigate beyond asking the VE if his testimony was consistent with the DOT. *See Gutierrez v. Colvin*, 844 F.3d 804, 808 (9th Cir. 2016) (to characterize a difference between VE testimony and the DOT as a conflict, the difference must be at odds with the DOT's "listing of job requirements that are essential, integral, or expected"). Furthermore, to the extent the ALJ erred in attempting to resolve the purported inconsistency between light work and a two-hour sitting or standing restriction, any such error was harmless because ultimately there was no inconsistency.

Plaintiff argues that the ALJ's purported error was not harmless. The court disagrees: the principle of harmless error posits that if the ultimate disability decision would remain unchanged after excising the offending section, the error is harmless. *See Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1040, 1054 (9th Cir. 2006). Here, because there was no actual inconsistency between the VE's testimony and the definition of light work, the ALJ could arrive at the same conclusion, absent the paragraph discussing the alleged inconsistency, and the final

decision would remain legally sufficient. Accordingly, the ALJ's error was harmless because it did not affect the non-disability decision.

Plaintiff also posits that the Commissioner cannot argue that the ALJ erred in making a finding of inconsistency because the Commissioner is restricted to responding to issues raised by Plaintiff. However, to the extent Plaintiff assigns error to the ALJ's reasoning regarding the alleged inconsistency, the harmless error rule is relevant, and its application appropriate on these facts.

*Conclusion*

Based on the foregoing, the Commissioner's decision denying Plaintiff's applications for DIB and SSI is AFFIRMED.

DATED this 26th day of November, 2018.

JOHN V. ACOSTA
United States Magistrate Judge